**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:17-cv-00923** |
| | § | |
| **NA LI and L & L INTERNATIONAL INC.,** | § | |
| | § | |
| **Defendants.** | § | |

**UNITED STATES' BRIEF IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

RICHARD E. ZUCKERMAN
**Principal Deputy Assistant Attorney General**

RAMONA S. NOTINGER
Ramona.S.Notinger@usdoj.gov
**Texas Bar No. 19158900**
**So. District of Texas Bar No. 204**
**U. S. Department of Justice**
**Tax Division**
**717 N. Harwood Street, Suite 400**
**Dallas, Texas 75201**
**Telephone No. (214) 880-9766**
**Facsimile No. (214) 880-9742**

**ATTORNEYS FOR UNITED STATES**

# TABLE OF CONTENTS

ISSUES PRESENTED ............................................................................................ 1

NATURE AND STAGE OF PROCEEDING ....................................................... 1

SUMMARY OF ARGUMENT ............................................................................ 2

    **A.**    THE 2000 & 2003 TAX LIABILITIES ............................................ 3

    **B.**    FEDERAL TAX LIENS ..................................................................... 4

    **C.**    NA LI'S ACTS OF AVOIDANCE OF HER FEDERAL INCOME TAX DEBTS.. 5

    **D.**    BIN LI'S DEPOSITION TESTIMONY SHOWED HE HELPED NA LI HIDE L & L FUNDS .......................................................................................... 7

    **E.**    DEPOSITION TESTIMONY OF JACOB THOMAS SHOWS NA LI'S TAX AVOIDANCE ...................................................................................... 9

    **F.**    NA LI'S USE OF L & L INTERNATIONAL FOR TAX AVOIDANCE ............... 11

ARGUMENT AND AUTHORITIES ................................................................ 12

    **A.**    THE TAX LIABILITY IS OWED BY NA LI ................................. 12

    **B.**    L & L INTERNATIONAL, INC. IS THE ALTER EGO OF NA LI ...................... 14

    **C.**    THE COURT SHOULD ENFORCE THE TAX LIENS AGAINST NA LI AND L & L INTERNATIONAL INC. ................................................................... 17

    **D.**    THE COURT SHOULD ORDER REPATRIATION OF ANY FUNDS TRANSFERRED BY NA LI OR L & L INTERNATIONAL INC. TO CHINA, FOR PAYMENT OF NA LI'S FEDERAL TAX DEBT .......................................... 19

CONCLUSION .................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Petroleum Exchange, Inc. v. Lord*,
    399 S.W.2d 213 (Tex.Civ.App. – Fort Worth 1966, *writ ref'd n.r.e.*)....................................15

*Aquilino v. United States*,
    363 U.S. 509 (1960)........................................................................................................18

*Avco Delta Corp. Canada v. United States*,
    540 F.2d 258 (7th Cir. 1976) .........................................................................................15

*Bengtson v. Comm'r*,
    T.C. Memo. 2011-50, WL 706833 .................................................................................12

*Better Beverages, Inc. v. United States*,
    619 F.2d 424 (5th Cir. 1980) .........................................................................................13

*Castleberry v. Branscum*,
    721 S.W. 2d 270 (Tex. 1986).........................................................................................15

*Century Hotels v. United States*,
    952 F.2d 107 (5th Cir. 1992) .........................................................................................17

*Coloman v. Comm'r*,
    540 F.2d 427 (9th Cir. 1976) .........................................................................................13

*Drye v. United States*,
    528 U.S. 49 (1999)..........................................................................................................19

*Estudios, Proyectos E Inversiones De Centro America, S.A. (EPICA) v. Swiss
    Bank Corp.*,
    507 So.2d 1119 (Fla. Dist. Ct. App. 1987) ...................................................................15

*F.P.P. Enterprises v. United States*,
    830 F.2d 114 (8th Cir. 1987) .........................................................................................14

*G.M. Leasing Corp. v. United States*,
    429 U.S. 338 (1977)........................................................................................................14

*G.M. Leasing Corp. v. United States*,
    514 F.2d 935 (10th Cir. 1975), *aff'd in part and rev'd in part on other
    grounds* 429 U.S. 388 (1977)...............................................................................13, 14

iii

*Harris v. United States*,
   764 F.2d 1126 (5th Cir. 1985) ..............................................................15

*Matter of Kirk*,
   114 B.R. 771 (Bnkr M.D. Fla. 1990) .....................................................13

*Moore v. Commissioner*,
   425 F.2d 713 (9th Cir. 1970) ................................................................13

*Nat'l Carbide Corp. v. Commissioner*,
   336 U.S. 422 (1949).............................................................................15

*Oxford Capital Corp. v. United States*,
   211 F.3d 280 (5th Cir. 2000) ................................................................14

*Ragan v. Tri-County Excavating, Inc.*,
   62 F.3d 501 (3d Cir. 1995)...................................................................16

*Spotts v. United States*,
   429 F.3d 248 (6th Cir. 2005) ................................................................19

*Texas Commerce Bank-Fort Worth, N.A. v. United States*,
   896 F.2d 152 (5th Cir. 1990) ................................................................18

*Towe Antique Ford Foundation v. IRS*,
   999 F.2d  1387 (9th Cir. 1993) .............................................................16

*Tri-State Equipment v. United States*,
   1997 WL 375264 (E.D. Cal. 1997).......................................................15

*United States v. Flaherty*,
   2010 WL 2900996 (D. Hawaii 2010) ...................................................13

*United States v. Grant*,
   2005 U.S. Dist. LEXIS 22440, 96 A.F.T.R.2d (RIA) 2005-6270 (S.D. Fla.
   2005) ....................................................................................................19

*United States v. Greene*,
   1984 U.S. Dist. LEXIS 18019, 1984 WL 256 (N.D. Cal. 1984) ............19

*United States v. McCallum*,
   970 F.2d 66 (5th Cir. 1992) ..................................................................12

*United States v. McNulty*,
   446 F. Supp. 90 (N.D. Cal. 1978) .........................................................19

*United States v. Novotny*,
   184 F. Supp.2d 1071 (D. Colo 2001).....................................................13

*United States v. Rodgers*,
    461 U.S. 677 (1983)..................................................................................18

*United States v. Ross*,
    196 F. Supp. 243 (S.D.N.Y. 1961), *aff'd*, 302 F.2d 831 (2d Cir. 1962)..................................19

*United States v. Scherping*,
    187 F.3d (8th Cir. 1999) ...........................................................................16

*United States v. Vittaly*,
    2006 WL 1883330 (N.D. Cal. 2006) *holding partially altered on other
    grounds on reconsideration by* 2006 WL 3834229 .....................................13

*Valley Finance, Inc. v. United States*,
    629 F.2d 162 (D.C. Cir. 1980)....................................................................16

*Wolfe v. United States*,
    798 F.2d 1241 (9th Cir. 1986) ...................................................................15, 16

*Zahra Spiritual Trust v. United States*,
    910 F.2d 240 (5th Cir. 1990) .....................................................................14, 16

**Statutes**

26 U.S.C. § 6001.........................................................................................12

26 U.S.C.§ 6020(b) ....................................................................................3

26 U.S.C. § 6321.........................................................................4, 5, 12, 18, 19

26 U.S.C. § 6322.........................................................................................18

26 U.S.C. § 6323.........................................................................................18

26 U.S.C. § 6323(f)(1)(A)(i).......................................................................18

26 U.S.C. § 6323(f)(2)(A)...........................................................................18

26 U.S.C. § 6502.........................................................................................4

26 U.S.C. § 6601.........................................................................................14, 20

26 U.S.C. § 6621(a)(2)...............................................................................14, 20

26 U.S.C. § 6622.........................................................................................14, 20

26 U.S.C. § 7402.........................................................................................14

26 U.S.C. § 7402(a) ....................................................................................14, 19

26 U.S.C. § 7403 ................................................................................................................18

28 U.S.C. § 1961(c)(1) ...................................................................................................14, 20

**Other Authorities**

26 C.F.R. 1.6001-1 ...........................................................................................................12

1 W. Fletcher Cyclopedia of the Law of Private Corps. § 41.70 (Supp. 1989) ............................15

Federal Rule of Civil Procedure 56 .......................................................................................1

The United States files this brief in support of its motion for summary judgment under Federal Rule of Civil Procedure 56 that (1) Defendant Na Li is liable to the United States for tax year 2000 federal income (Form 1040) tax in the amount of **$1,420,041**; and (2) the United States may foreclose its liens against and liquidate any property owned by or titled to L & L International Inc., the alter ego of Na Li, for application to the income tax owed by Ms. Li.  The United States also seeks an order of repatriation, to require Na Li and L&L International, Inc., to repatriate any funds that belonged to Na Li or L&L International, Inc. that Na Li or her father, Bin Li, transferred to the Bank of China or any other foreign account, which are impressed with federal tax liens, for payment or partial payment of Na Li's federal income tax debt.  An appendix of exhibits is being filed with this brief.

## ISSUES PRESENTED

1.      Whether Na Li is liable to the United States for tax year 2000 federal income (Form 1040) tax in the amount of **$1,420,041**?

2.      Whether L&L International Inc. is the alter ego of Na Li, such that the United States may enforce its tax liens against Na Li and L & L International for the payment of Na Li's tax debt?

3.      Whether the Court should enter an order requiring Na Li and L&L International Inc. to repatriate any funds of Na Li or L & L International that were transferred to the Bank of China or any other foreign account, and order the turnover of these funds to the United States for payment of Na Li's $1.4 million income tax debt?

## NATURE AND STAGE OF PROCEEDING

This is a federal tax collection suit.  All of the discovery has been completed, and fourteen witnesses have been deposed.  There is no genuine issue of material fact that the United States is entitled to a summary judgment that Defendant Na Li is indebted to the United States (Internal Revenue Service) for $1,420,041 for her income tax for the year 2000.  In addition, the Court should order enforcement of federal tax liens against Defendants Na Li and L

1

& L International Inc., the alter ego of Na Li, for payment of Na Li's tax debt.  Finally, the Court should order the repatriation of Na Li's and L & L International's funds that were transferred to China or other foreign accounts, for payment of Na Li's tax debt.

## SUMMARY OF ARGUMENT

Na Li failed to file a U.S. federal income tax return, despite living in the United States and earning income from the stocks traded using her Social Security Number.  After an audit examination, the IRS prepared a return for Na Li that included the trading income.  The IRS gave her a notice of deficiency that allowed her to challenge its examination in Tax Court.  When Na Li did nothing, the IRS assessed her with these taxes and began collection.   After Ms. Li was assessed the 2000 income tax and the IRS began attempting to collect her tax debt, she incorporated and began operating L & L International Inc., an internet baggage company in Houston, Texas.  Ms. Li used L & L International to hide her income and assets from the Internal Revenue Service, to avoid payment of her income tax debt.  She used L & L International to pay her personal expenses.  She has a history of failing to file and failing to timely file her federal income tax returns with the Internal Revenue Service, and a history of underreporting her federal income and failing to pay federal income tax, for tax years other than tax year 2000.   Also, after Bin Li, the father of Na Li, was served with a deposition subpoena in this case, he transferred to China the $230,000 he withdrew from an L & L International checking account the day before he and Na Li met with the IRS revenue officer assigned to collect her tax debt.  Shortly after Mr. Li gave his deposition in this case, he fled the United States and returned to the Peoples Republic of China, of which he is a citizen.  Neither of the Lis have ever been citizens of the United States of America.  Since the year 2000, Na Li has avoided paying taxes to the Internal Revenue Service, by failing to file her income tax returns and secretion of her income and assets.

2

### A.    THE 2000 & 2003 TAX LIABILITIES

Na Li failed to file a federal income tax return for her 2000 income tax year, despite having large amounts of income from stock trades under her Social Security Number reported to the IRS by third parties.  After an audit examination and not receiving responses to its requests for substantiation of any cost basis in these trades, the IRS computed Na Li's tax liability and gave her a notice of deficiency.  When she failed to challenge the notice of deficiency in the Tax Court, a delegate of the Secretary of the Treasury made a federal income (Form 1040) tax assessment against Na Li, for income tax, penalties, and interest, for tax year 2000.  As of April 15, 2019, the balance due on this tax was **$1,420,041.54.**  This tax was assessed on March 26, 2007, under the provisions of Internal Revenue Code [26 U.S.C.] § 6020(b) due to the failure of Ms. Li to file a federal income (Form 1040) tax return for this tax year.  See IRS Form 4340, Certificate of Assessments & Payments, **Gov. Ex. 1;** Declaration of IRS Revenue Officer Anubhav "Anu" Bagga, **Gov. Ex. 2,** pp. 1-3; statutory notice of deficiency, **Gov. Ex. C** to Bagga Dec., p. DOJ 0068.

Despite proper notice of the tax assessment and demand for payment, Na Li has failed, neglected, or refused to pay her 2000 income tax liability.  Bagga Dec., p. 3; **Gov. Ex. 2.**

A delegate of the Secretary of the Treasury also made a federal income (Form 1040) tax assessment against Na Li, for income tax, penalties, and interest, for tax year 2003, for trading stocks.  This tax was assessed on February 26, 2007, under the provisions of Internal Revenue Code [26 U.S.C.] § 6020(b) due to the failure of Ms. Li to file a federal income (Form 1040) tax return for this tax year, and as of that date, the balance owed by Ms. Li to the IRS for her 2003 income tax was $109,764.40.  See Declaration of IRS Revenue Officer Anubhav Bagga, **Gov.**

3

**Ex. 2,** p. 7.  Despite proper notice of the tax assessment and demand for payment, Na Li failed, neglected, or refused to pay her 2003 income tax liability.  *Id.*  On February 27, 2017, the IRS wrote off Ms. Li's 2003 income tax as uncollectable when the ten-year statute of limitations for collecting it expired.[1]  See Bagga Dec., p. 7.

Further, as part of this litigation, the United States served discovery on Na Li seeking any evidence that she had to substantiate a challenge to the 2000 income tax liability.  See ECF No. 14-1. She provided none.  In particular, she failed to produce any testimony from her mother regarding the ownership of the stock trades, and she failed to produce any records of cost basis in those stock trades.  Although she told the IRS she was speaking with her accountants about correcting the 2000 tax year, that she will make attempts to secure cost basis information from stocks her mother traded under her social security number, and file a correct 2000 income tax return, she never did file an amended income (Form 1040) tax return for tax year 2000 showing the cost basis in the stock trades.  See Bagga Dec., pp. 5-6, **Gov. Ex. 2.**  Na Li never produced her mother for a deposition, nor did she provide the United States with her testimony in an affidavit or declaration.

**B.     FEDERAL TAX LIENS**

Pursuant to 26 U.S.C. § 6321, statutory federal tax liens arose by operation of law on March 26, 2007, the date of assessment of Na Li's 2000 income tax liability described above, and attached to all property or interests in property of Na Li, on the date of assessment, or acquired thereafter.

---

[1] The ten-year statute of limitations to collect the March 26, 2007 assessment of Na Li's 2000 income tax liability was suspended when the United States filed this suit on March 24, 2017.  26 U.S.C. § 6502.

4

On April 25, 2008, a notice of federal tax lien was filed against Na Li in Montgomery County, Texas, where she was residing at the time, for the 2000 federal tax liability described above.  Bagga Dec., p. 9; **Govs. Ex. 2** and **M** thereto.  On March 23, 2017, a notice of federal tax lien was refiled against Na Li in Harris County, Texas, where she now resides, for the 2000 federal tax liability described above.  *Id.*   These tax liens encumber Ms. Li's interest in all real property located in those counties and any personal property wherever located.  *Id.*  On March 23, 2017, a notice of federal tax lien was filed in Harris County, Texas, against Defendant L & L International Inc., as alter ego of Na Li.  *Id.*  On March 24, 2017, the IRS filed a notice of federal tax lien against L&L International, Inc. as alter ego of Na Li, in the Texas Secretary of State UCC records.  *Id.*  These alter ego liens attach to any property held in the name of L & L, including bank accounts.  Bagga Dec., p. 9, **Gov. Ex. 2.**

## C.    NA LI'S ACTS OF AVOIDANCE OF HER FEDERAL INCOME TAX DEBTS

In or about 2006, at a time when Na Li was already indebted to the IRS for tax years 2000 and 2003 income taxes, she became employed by Bag Republic, LLC, a Texas limited liability company owned by Jacob Thomas.  **Gov. Ex. 3 -** Thomas Depo., pp. 101, 125. Although Mr. Thomas was the sole member of Bag Republic, LLC, articles of formation for this company were filed with the Texas Secretary of State with the signature of JingXia Lu, the mother of Na Li, who had no involvement with Bag Republic, LLC.  Thomas Depo., **Gov. Ex. 3,** p. 46, Exhibit 64 thereto; Na Li Depo. I, **Gov Ex. 8,** p. 217; Na Li Depo. II, **Gov. Ex. 4,** p. 234.

On June 4, 2009 and July 21, 2009, Na Li made two wire-transfers of $50,000 (a total of $100,000) from the Bag Republic account at Chase Bank to an account in her name at the Bank of China in China.  Jacob Thomas Depo., pp. 31, 32, 37, 38, and **Exhibits 1** and **2** thereto.  This was income to Na Li and subject to the tax liens against her, yet on her 2009 federal income tax

return, Ms  Li reported total adjusted gross income for tax year 2009 in the amount of $12,000 from wages that she earned while working at Bag Republic, but none of the funds she received from the wire transfers to her Chinese bank account in the year 2009.  IRS transcript, **Gov. Ex. D** to Bagga Dec., **Gov. Ex. 2;** p. 3 of Bagga Dec.

On December 24, 2010, Na Li wire-transferred another $100,000 from the Bag Republic account at Chase Bank to the account in her name at the Bank of China in China.  Jacob Thomas Depo., pp. 38, 39, 40, and Exhibit 3 thereto, **Gov. Ex. 3.**  See also statement on Na Li's Chinese bank account, marked Ex. 13 to her December 3, 2018 deposition (Na Li Depo II), in **Gov. Ex. 4.**  This $100,000 was income to Na Li in the year 2010 and subject to the tax lien for her 2000 taxes.  Thomas Depo., pp. 39-40.  Yet on her 2010 federal income tax return filed on or about February 24, 2014, Ms. Li reported total adjusted gross income for tax year 2010 in the amount of $0, and none of the funds she received from the wire transfer to her Chinese bank account in the year 2010.  Bagga Dec. p. 3; **Gov. Ex. 2,** and **Gov. Ex. D** attached thereto.

On or about January 10, 2011, Na Li incorporated L & L International Inc. with the Texas Secretary of State.  **Gov. Ex. 5;** Bagga Dec., **Gov. Ex. 2,** p. 7.  Before Ms. Li incorporated L & L, she had a personal checking account with JP Morgan Chase Bank in Houston, Texas, and she paid her personal expenses from this account.  Bagga Dec., p. 7; **Gov. Ex. 2;** and **Gov. Ex. 6,** Chase Bank records on Na Li's account.  After the IRS instituted enforced collection of Na Li's 2000 income tax, she began using the L & L Chase bank account, or a credit card in the name of L&L International and her father, Bin Li, to pay her (Na Li's) personal expenses.  Bagga Dec., p. 7; **Gov. Ex. 2.**  Before he retired, Bin Li was a handyman and construction remodeler.  Bin Li Depo., **Gov. Ex. 7,** pp. 28, 56.  Bin Li had nothing to do with the operation of L & L International, and he was not an officer or director of L & L International, although Na Li paid

6

Bin Li wages from the Chase Bank account of L & L International, during years when he (Bin Li) failed to file a federal income (Form 1040) tax return with the IRS.  Deposition of Bin Li, **Gov. Ex. 7,** pp. 28, 29, 75, 77; Exhibits 6, 21 thereto.

Although Na Li's 2000 income tax was assessed in the year 2007, she did not try to challenge it until the year 2012, according to the records of the IRS, and as admitted by Ms. Li in her first deposition.  **Gov. Ex. 8,** p. 272, 273; Bagga Dec., p. 6, **Gov. Ex. 2**.

On February 5, 2016, Na Li was interviewed by IRS Revenue Officer Anu Bagga.  As shown by his history notes, Na Li told Revenue Officer Bagga that she allowed her mother to use her social security number to trade stocks, because her mother did not have her own U.S. social security number.  Bagga Dec., pp. 4, 6, **Gov. Ex. 2,** and **Gov. Ex. B** thereto, pp. 12-15.

## D.   BIN LI'S DEPOSITION TESTIMONY SHOWED HE HELPED NA LI HIDE L & L FUNDS

On July 20, 2018, the Court entered a Show Cause Order (ECF No. 25), requiring Na Li, her counsel, and Bin Li, her father, to appear for a show cause hearing on August 17, 2018, during which the Court would determine whether Na Li should be held in civil contempt of Court, for her failure to comply with the September 29, 2017 Order (ECF No. 15), and whether Bin Li should be held in civil contempt of Court for his failure to comply with the United States' subpoena duces tecum, for failing to appear for his June 19, 2018 deposition.

On August 17, 2018, a hearing was held on the Government's motion for show cause order (ECF No. 23), at which Na Li and Bin Li appeared as ordered, ECF No. 25.  At this hearing, the Court ordered:

> The motion for contempt, (Docket Entry No. 23), is denied pursuant to the parties' compliance with the court's rulings stated on the record.  By August 20, Na Li must make a formal request for all bank records from the banks in China and the New York branch, showing withdrawals from, deposits into, and the other transactions set out in the government's Exhibit 14.  Na Li must report to the government and produce copies of the

bank records to within 48 hours after receiving them.  Bin Li must produce the requested documents and appear for a deposition in the court's chambers.

On August 31, 2018, Bin Li gave a Court-ordered deposition to the United States, but he failed to produce any documents in compliance with the subpoena duces tecum and Court's order, except for his affidavit, which he testified he could not read, because it was written in English, and he cannot read English.  **Gov. Ex. 7,** pp. 9-18.  He testified that his occupation was that of a remodeler, but he has not worked much since 2009 due to his health problems.  *Id.,* p. 57.  He testified that in February of 2017, he withdrew $235,000 from the L & L International bank account, but he only deposited $230,000 of those funds into his bank account at American First National Bank.  *Id.,* p. 59.  The withdrawal occurred on February 27, 2017, one day before Na Li and Bin Li met with IRS Revenue Officer Bagga about Na Li's 2000 income tax debt, and shortly before this case was filed.  Bagga Dec., pp. 8-9; **Gov. Ex. 2.**  Also in his deposition, Bin Li gave multiple stories as to what happened to these funds, but finally testified that JingMin Lu, Na Li's aunt, sent someone to his house to pick up $230,000 in cash on August 5, 2019.  Bin Li Depo., pp. 44-48, 58-64.  See also Government Exhibits J and K to the Bagga Dec. **(Gov. Ex. 2)**, Bin Li's bank records, which show two $230,000 transactions, one in June and one in July of 2018, after Mr. Li was subpoenaed to testify in this case.  **Gov. Ex. I** to Bagga Dec.; Bin Li Depo. p. 40.  Bin Li also testified that he was worried that the IRS would take the money.  Bin Li Depo., p. 61.  He also testified regarding a currency transaction report as to which he either withdrew or deposited more than $10,000 that was generated when he withdrew the  $230,000 from his account at American First National Bank on July 23, 2018 (after he was served with the subpoena for his deposition).  *Id.,* pp. 40-41.  He testified that he has no documents showing

8

what happened to the $230,000 he withdrew from the L & L International account and disposed of before his August 31, 2018 deposition in this case.  *Id.,* pp. 10, 12, 45.

Bin Li also testified that he has no corporate records or any other documents pertaining to L & L International.  *Id.* at pp. 10-12, 88.  He testified that he was never the president of L & L International.  *Id.* at p. 88.  He testified that he did some work for L & L International, but did not remember when or how much he was paid.  *Id.* at p. 77.  He testified that in 2009, his daughter wire-transferred $100,000 or $200,000 to an account for him to have surgery in China, but he has no documents to prove it.  *Id.* at p. 78-79.  He testified that he did not remember if he had a charge card for L & L International, but then testified that he did not.  *Id.* at pp. 83, 85.  He testified that he made charges on the L & L charge account for office things and repairing a table, but had never seen the charge account records marked Exhibit 20 to his deposition.  *Id.* at p. 84.  He never saw the IRS W-2 forms showing that L & L International paid him wages, and denied that he ever signed a tax return for L & L International.  *Id.* at p. 86, 87.

Bin Li also testified that he never saw Na Li's mother use Na Li's social security card to trade stock at Super Trade, and that he never saw the application that Na Li's mother signed to open an account at Super Trade.  *Id.* pp. 93-94.  Super Trade is the company where the stock trades in issue occurred in the year 2000.  *Id.,* p. 92.

## E.    DEPOSITION TESTIMONY OF JACOB THOMAS SHOWS NA LI'S TAX AVOIDANCE

Jacob Thomas met Na Li in the year 2000, when they were both students at the University of Houston.  Thomas Depo, **Gov. Ex. 3,** p. 170.  From approximately 2006 until early 2011, Jacob and Na Li worked for Bag Republic LLC, Jacob's business.  *Id.,* pp. 17, 26, 43, 44, 47, 125, 155-156.  Until he received the United States' subpoena on June 11, 2018, to give a deposition in this case on June 20, 2018, he had not heard from Na Li for five or six years. *Id.,* p.

16. After he received the subpoena, Na Li called him and wanted to talk.  *Id.,* p. 14.  She told him that he should testify that the Bag Republic wire transfers went to a business and not to her, and that Bag Republic was a failed business.  *Id.,* pp. 21-23, 29, 30.  In other words, Thomas indicated that Na Li wanted him to testify untruthfully in his deposition to support her version of the facts.  *Id.,* pp. 21, 23, 25, 32 .  Instead, he testified that the main reason he and Na Li stopped working together at Bag Republic was because Na Li had taken over the accounting of the business, and because she kept him from knowing what was happening with the finances and tax returns of the business by being the sole contact with the accountants.  *Id.,* pp. 23, 25, 28.   Na Li told Thomas about her position in this lawsuit, but not the Government's position.  *Id.,* p. 28. He testified that in 2009 and 2010, Na Li transferred a total of $200,000 to her Bank of China account from the Bag Republic account, and that this was compensation to Na Li from Bag Republic.  *Id*., pp. 31, 32, 36-40**.**  Na Li did not report this compensation to the IRS on her 2009 or 2010 income tax returns, according to the records of the IRS.  Bagga Dec., **Gov. Ex. 2**, p. 3; **Gov. Ex. D** thereto.

Sometime after Thomas founded Bag Republic LLC, he found out that someone had filed a certificate of formation for Bag Republic LLC, showing that the organizer of the company was JingXia Lu.  Thomas Depo*,* p. 46, **Gov. Ex. 3,** and Exhibit 5 thereto.   He testified that he does not know JingXia Lu, and that he or she had nothing to do with Bag Republic LLC.  Thomas Depo., p. 46, **Gov. Ex. 3.**

Jacob Thomas also testified that Na Li's salary from Bag Republic was $24,000 per year, but that she made wire transfers to herself out of the corporate bank account for additional amounts, yet the W-2s going to Na Li only showed annual income of $24,000, and there were no

Forms W-2s or 1099s issued to her for the additional amounts of income she received from Bag Republic.  Thomas Depo., pp. 56, 60-61, 118, 119; **Gov. Ex. 3.**

F.      **NA LI'S USE OF L & L INTERNATIONAL FOR TAX AVOIDANCE**

On January 10, 2011, Na Li formed L & L International Inc., a Texas corporation, and listed her aunt, JingMin Lu, a Chinese citizen who has never resided in the United States, as the registered agent, director, and sole shareholder of L & L on records filed with the Texas Secretary of State and tax returns filed with the IRS.  See Bagga Dec., p. 7, **Gov. Ex. 2, Gov. Ex. 4,** pp. 95-96, **Gov. Ex. 5**.  However, Na Li, not JingMin Lu, signed L & L's corporate records and tax returns.  **Gov. Exs. 5, 9,** Exhibit 30 to Na Li Depo. II, **Gov. Ex. 4.**  Na Li had Lee, Huang & Associates prepare L & L's income (Forms 1120) tax returns, employment (Form 941) tax returns, and unemployment (Form 940) tax returns, which Na Li or James Lee signed and filed with the IRS. Exhibits 29-38 to Na Li Depo. II, **Gov. Ex. 4.**  Na Li even listed JingMin Lu as a signatory on L & L's account at JP Morgan Chase Bank, but only Na Li signed checks on this account.  **Gov. Ex. 10.**  In addition, Na Li paid her personal expenses out of the L & L bank account at Chase, but did not declare these payments as income to her on her income (Form 1040) tax returns she filed with the IRS. Bagga Dec., **Gov. Ex 2,** p. 6, and **Gov. Ex. D** thereto. Na Li also used L & L's corporate credit card to pay her personal expenses, without reporting these payments as income to her on her income (Form 1040) tax returns she filed with the IRS. *Id.*  Na Li was the sole person who controlled and benefited from the business of L & L.  She paid her father wages out of the L & L bank account, during years when he either performed no work, or minimal work, for L & L. See **Gov. Ex. 7,** p. 77.  Na Li never produced JingMin Lu for a deposition, nor did she provide the testimony of JingMin Lu to the United States by affidavit or declaration.

## ARGUMENT AND AUTHORITIES

The United States is entitled to a personal judgment against Na Li for her 2000 federal income (Form 1040) tax in the amount of **$1,420,041**, along with an order enforcing the federal tax liens and requiring a sale or liquidation of Na Li's and  L & L International's assets to satisfy a portion of the federal tax liability of Na Li.

### A.   THE TAX LIABILITY IS OWED BY NA LI

The income tax owed by Na Li is **$1,420,041.54**, plus interest and penalties thereon from April 15, 2019, and remains unpaid.  Certified IRS Form 4340, and the Declaration of Anu Bagga (**Gov. Exs. 1, 2**) establish the taxes owed.  The IRS Form 4340, Certificate of Assessments & Payments, is presumptive proof of a valid assessment if the taxpayer produces no evidence to counter the presumption.[2]  Despite notice and demand for payment of these liabilities, Na Li has neglected or refused to fully pay them.

Na Li failed to file a 1040 individual income tax return for tax year 2000.  However, because the IRS received reports of income  being paid to Ms. Li, it calculated her income (and income tax) based on these reports.  Bagga Dec., page 7. **Gov. Ex. 2**, and **Gov. Ex. E** thereto. Ms. Li may assert that these amounts are incorrect in one respect.  Ms. Li may argue that the amounts used to calculate her income were based on stock sales she or her mother conducted through a brokerage firm (Super Trade), and these calculations of her income by the IRS did not account for the purchase cost (tax basis) for the  stock sales.

However, a taxpayer is required to keep income tax return records sufficient to establish the amount of gross income earned by the taxpayer.  *See* 26 U.S.C. § 6001; 26 C.F.R. 1.6001-1; *Bengtson v. Comm'r*, T.C. Memo. 2011-50, WL 706833.  In addition to this general record-

---

[2] *See* 26 U.S.C. § 6321; *United States v. McCallum*, 970 F.2d 66, 71 (5th Cir. 1992).

keeping requirement, the taxpayer bears the burden to prove a cost basis in property, including stock. *Better Beverages, Inc. v. United States*, 619 F.2d 424, 428, fn. 4 (5ᵗʰ Cir. 1980); *Moore v. Commissioner*, 425 F.2d 713, 715 (9th Cir. 1970) ("the taxpayer bears the burden of establishing the cost basis of property"); *Coloman v. Comm'r*, 540 F.2d 427, 429-30 (9ᵗʰ Cir. 1976).  In the absence of such evidence, the IRS may properly assign the taxpayer a zero basis in the property. *Better Beverages, Inc.*, 619 F.2d at 428 n.4 ("Where the taxpayer fails to carry this burden to prove a cost basis in the item in question, the basis utilized by IRS, which enjoys a presumption of correctness, must be accepted even where, as here, the IRS has accorded the item a zero basis."); *G.M. Leasing Corp. v. United States*, 514 F.2d 935, 941 (10ᵗʰ Cir. 1975), *aff'd in part and rev'd in part on other grounds* 429 U.S. 338 (1977); *United States v. Novotny*, 184 F. Supp.2d 1071, 1082 (D. Colo 2001).  Therefore, when the IRS receives evidence of a taxpayer's stock sales from a brokerage firm, the IRS may properly assign a cost basis of zero to the extent that the taxpayer does not prove otherwise.  *Matter of Kirk*, 114 B.R. 771, 776-77 (Bnkr M.D. Fla. 1990); *United States v. Flaherty*, 2010 WL 2900996 at *4 (D. Hawaii 2010) *on appeal*; *United States v. Vittaly*, 2006 WL 1883330, at *3 (N.D. Cal. 2006) *holding partially altered on other grounds on reconsideration by* 2006 WL 3834229.  See the IRS statutory notice of deficiency, **Gov. Ex. C** to Bagga Dec. **(Gov. Ex. 2)**, p. DOJ 0068, showing that Ms. Li never provided to the IRS proof of her cost basis in the stock traded for tax year 2000 during the audit.

Accordingly, pursuant to 26 U.S.C. § 7402, the United States is entitled to a judgment against Na Li in the amount of **$1,420,041.54** for her 2000 income tax, plus penalties, statutory additions, and additional prejudgment and post-judgment interest thereon from April 15, 2019 until paid, pursuant to 28 U.S.C. § 1961(c)(1); and 26 U.S.C. §§ 6601, 6621(a)(2), and 6622.

## B.   L & L INTERNATIONAL, INC. IS THE ALTER EGO OF NA LI

Pursuant 26 U.S.C. § 7402(a) and common law, an alter ego of a debtor may be held liable for debts owed by a debtor and the alter ego's assets may be reached to satisfy those debts. *See Zahra Spiritual Trust v. United States*, 910 F.2d 240, 244-245 (5th Cir. 1990).  It is well-settled that property held by a taxpayer's alter ego may be subjected to a federal tax lien or levy.  *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-351 (1977).

The alter-ego doctrine focuses on the relationship between a debtor and an entity, such as where a debtor uses a corporation as a mere instrumentality to avoid legal obligations.  In such a situation, all of the assets of the corporation may be levied upon to satisfy the debtor's obligation, because the law recognizes no difference between the debtor and the alter-ego corporation.  *See, e.g., Oxford Capital Corp. v. United States*, 211 F.3d 280, 284 (5th Cir. 2000).  An entity that is the taxpayer's alter-ego has "no countervailing effect for purposes of his federal income tax."  *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-351(1977) (assets of taxpayer's alter-ego corporation may be seized to satisfy taxpayer's tax debt).

It is well-established that the IRS can apply the "alter ego" doctrine to disregard the corporate form to collect taxes.  *G.M. Leasing Corp. v. United States*, 514 F. 2d 935 (10th Cir. 1975), *aff'd in part and rev'd in part on other grounds*, 429 U.S. 338 (1977).  This doctrine can be applied to other types of entities, such as trusts, churches, and corporations.  *See, e.g., F.P.P. Enterprises v. United States*, 830 F.2d 114, 118 (8th Cir. 1987) (applying the alter ego doctrine to taxpayers' trust).   As noted previously, the alter ego doctrine is not a tax doctrine but rather a debtor-creditor law theory sounding in equity that is available to all creditors, including the IRS. *Avco Delta Corp. Canada v. United States,* 540 F.2d 258, 264 (7th Cir. 1976).  Further, a finding of alter ego does not require a finding of specific intent, insolvency, or a lack of a legitimate purpose for the entity.  *See, e.g., Wolfe v. United States*, 798 F.2d 1241, 1243-44 (9th Cir. 1986)

14

(alter ego doctrine applied and corporate form disregarded where corporation was used to "evade a public duty, such as the paying of taxes") (*citing Nat'l Carbide Corp. v. Commissioner*, 336 U.S. 422, 431-434 & n.13 (1949); and *Harris v. United States*, 764 F.2d 1126, 1128 (5th Cir. 1985)).

The Texas Supreme Court has recognized that the corporate fiction must be disregarded, even though corporate formalities have been observed and corporate and individual property has been kept separately, "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." *Castleberry v. Branscum*, 721 S.W. 2d 270, 271 (Tex. 1986). Although the traditional goal for disregarding the corporate fiction is to hold the individual shareholders liable for the debts of the corporation, the United States is entitled to apply the alter ego doctrine in reverse to use L & L's assets to pay Na Li's tax liability.  This reverse piercing of the veil has been recognized under Texas law. *American Petroleum Exchange, Inc. v. Lord*, 399 S.W.2d 213, 216-17 (Tex.Civ.App. – Fort Worth 1966, *writ ref'd n.r.e.*).  If a creditor makes a sufficient showing "that the corporation is the alter ego of the debtor, the corporation is treated as the debtor and its property may be attached * * *."   1 W. Fletcher Cyclopedia of the Law of Private Corps. § 41.70, at 213 (Supp. 1989) (*citing Estudios, Proyectos E Inversiones De Centro America, S.A. (EPICA) v. Swiss Bank Corp.,* 507 So.2d 1119 (Fla. Dist. Ct. App. 1987).

The alter ego doctrine, like the nominee doctrine, is a doctrine grounded in equity.  *See Tri-State Equipment v. United States*, 1997 WL 375264 at * 12 (E.D. Cal. 1997) (citation omitted). The alter ego doctrine will be applied "whenever necessary to avoid injustice" or where public policy demands its application.  *Ragan v. Tri-County Excavating, Inc.*, 62 F.3d 501, 508 (3d Cir. 1995).  In connection with federal tax cases, the "Government's inability to satisfy legitimate tax debts clearly may form a sound basis for" the application of the alter ego doctrine. *Valley*

15

*Finance, Inc. v. United States*, 629 F.2d 162, 172 (D.C. Cir. 1980) (citations omitted); *accord Towe Antique Ford Foundation v. IRS*, 999 F.2d 1387 at 1391 (9th Cir. 1993) (citing *Valley Finance, supra*); *Wolfe v. United States*, 798 F.2d 1241, 1244 (9th Cir. 1986) (alter ego doctrine applied and corporate form disregarded where corporation was used to "evade a public duty, such as the paying of taxes."), *amended on other grounds*, 806 F.2d 1410 (9th Cir.1986); *see also United States v. Scherping*, 187 F.3d at 801, 804 (8th Cir. 1999) ("While taxpayers are permitted to reduce their tax burden by any lawful means available, they are not permitted "to construct paper entities to avoid taxation [or the payment of taxes] when those entities are without economic substance." *** "[T]here are strong public policy reasons for reverse piecing the corporate veil in the present case, that is to avoid fraud and collecting delinquent federal taxes.")

The determination of whether an alter ego relationship exists between a taxpayer and a corporation, trust, or other entity is made by examining the facts and circumstances of a particular case. *See, e.g.*, *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 245 (5th Cir. 1990) (court should focus on the relationship between taxpayer and entity, and listing factors to be considered).

Courts that have been called upon to apply the alter ego doctrine in tax cases use objective factors in determining whether an alter ego relationship exists. These factors include:

1) Whether Na Li expended personal funds for L & L;
2) Whether Na Li enjoyed the benefits of L & L;
3) Whether a relationship existed between Na Li and L & L;
4) Whether Na Li exercised dominion and control over L & L;
5) Whether L & L interfered with Na Li's use of the property;
6) Whether Na Li owned L & L;
7) Whether L & L observes corporate formalities;
8) Whether L & L maintains books and records;
9) Whether L & L and Na Li commingled funds;
10) L & L's capitalization;

16

11)   Whether Na Li transferred assets, property, or funds to L & L or vice versa;
12)   Whether L & L was organized by Na Li;
13)   Whether L & L operated as a traditional corporation;
14)   Whether L & L transacts Na Li's business; and
15)   Whether L & L pays Na Li's personal obligations.

*See Century Hotels v. United States*, 952 F.2d 107, 110 n.5 (5th Cir. 1992).

With respect to factors 2, 3 and 4, Na Li enjoyed the benefits of L & L when she used its bank account and credit card to pay her personal expenses; she claimed she was the president of L & L; and she exercised complete dominion and control over L & L.

Several other factors are informative but not alone determinative in this case.  Factor 6 – Na Li is the de facto owner of L & L.  Factor 7 – L & L failed to observe corporate formalities when it failed to file W-2 or Form 1099 statements and its recent federal income (Form 1120) tax returns with the IRS.  It also failed to keep corporate minutes or a corporate minute book.  Factor 8, L & L did not maintain books and records according to Na Li.

Additionally, as shown above, there is an abundance of evidence that Na Li was avoiding the payment of her federal tax liability, and that she used L & L International Inc. to avoid paying her taxes.  As the case law makes clear, the purpose of the alter ego doctrine is to prevent this type of creditor avoidance.

Accordingly, the United States is entitled to a judgment that L & L is the alter ego of Na Li, and that its assets must be used or sold to pay her taxes.

## C.   THE COURT SHOULD ENFORCE THE TAX LIENS AGAINST NA LI AND L & L INTERNATIONAL INC.

Having established that L & L is the alter ego of Na Li, the United States is entitled to foreclose its tax liens and sell L & L and its assets in collection of her tax debt.  These tax liens arose by statute under 26 U.S.C. §§ 6321 and 6322.  Section 6321 provides, in part, that if any person liable to pay any tax neglects or refuses to pay the same  after demand, the amount

17

(including ... interest, ... penalty ...) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.  Section 6321 gives the IRS a lien "upon all property and rights to property" belonging to the delinquent taxpayer. *Texas Commerce Bank-Fort Worth, N.A. v. United States*, 896 F.2d 152, 161 (5th Cir. 1990), citing *Aquilino v. United States*, 363 U.S. 509 (1960).  The lien arises on the date that the IRS assesses unpaid taxes, applies to currently owned as well as after-acquired property, and continues until the taxpayer satisfies the debt, or the statute of limitations runs.  *Texas Commerce Bank-Fort Worth*, at page 161, citing 26 U.S.C. § 6322.  The United States may file a public notice of its tax lien in order to preserve its statutory lien priority against the taxpayer with respect to third parties, such as purchasers, lenders, and judgment lien creditors.  26 U.S.C. § 6323.  Here, under Section 6323(f)(1)(A)(i) and (2)(A), the United States properly perfected its tax liens against Na Li by filing them in Montgomery and Harris Counties, and it perfected its alter ego tax liens against L & L International by filing them in Harris County and with the Texas Secretary of State.  Bagga Dec., p. 9,  **Gov. Ex. 2** and **Gov. Ex. M** thereto.

Federal tax liens may be enforced by the Court pursuant to 26 U.S.C. § 7403 through an order of sale.  *United States v. Rodgers*, 461 U.S. 677, 691-92 (1983).  Here, the law clearly supports the Government's request to enforce the federal tax liens and order the turnover of L & L's cash and sale of L & L's other assets to pay Na Li's federal tax debt.  The United States may satisfy a tax delinquency by imposing a lien on any "property" or "rights to property" belonging to the taxpayer.  *Drye v. United States*, 528 U.S. 49, 55 (1999), (quoting 26 U.S.C. § 6321).  The statutory language "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer may have."  *Id.* at 56.  Accordingly, "property" and "rights to property" may include "not only property and rights to property owned by the taxpayer, but also property

18

held by a third party if it is determined that the third party is holding the property as a nominee ... of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005).

**D.   THE COURT SHOULD ORDER REPATRIATION OF ANY FUNDS TRANSFERRED BY NA LI OR L & L INTERNATIONAL INC. TO CHINA, FOR PAYMENT OF NA LI'S FEDERAL TAX DEBT**

District courts have broad authority to issue orders necessary for the government to collect unpaid federal tax liabilities.  26 U.S.C. § 7402(a).  That authority extends to orders of repatriation of funds held in foreign countries, and district courts have repeatedly ordered that assets such as those held in foreign bank accounts be repatriated to pay down tax owed to the federal government.  *United States v. Grant*, 2005 U.S. Dist. LEXIS 22440, 96 A.F.T.R.2d (RIA) 2005-6270 (S.D. Fla. 2005); *United States v. Greene*, 1984 U.S. Dist. LEXIS 18019, 1984 WL 256 (N.D. Cal. 1984); *United States v. McNulty*, 446 F. Supp. 90 (N.D. Cal. 1978); *United States v. Ross*, 196 F. Supp. 243 (S.D.N.Y. 1961), *aff'd*, 302 F.2d 831 (2d Cir. 1962).

Therefore, this Court should enter an order of repatriation, requiring Na Li and L&L International to repatriate their respective funds that were transferred to China or other countries, for payment of Na Li's federal tax debt.

## CONCLUSION

The United States is entitled to a judgment for Na Li's federal income tax in the amount of **$1,420,041.54**, plus penalties, statutory additions, and additional prejudgment and post-judgment interest thereon from April 15, 2019 until paid, pursuant to 28 U.S.C. § 1961(c)(1); and 26 U.S.C. §§ 6601, 6621(a)(2), and 6622.  The United States is also entitled to an order enforcing its federal tax liens against Na Li and against L & L International Inc., as the alter ego of Na Li, and an order of sale of their property, with the proceeds to be applied first to costs of sale, and then to the United States for the payment or partial payment of the federal tax debt of

Na Li. Finally, the Court should enter an order of repatriation, requiring Na Li and L&L

International Inc. to repatriate their respective funds that were transferred to China or other

countries, for payment of Na Li's federal tax debt.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General


/s/ Ramona S. Notinger
RAMONA S. NOTINGER
Ramona.S.Notinger@usdoj.gov
Texas Bar No. 19158900
So. District of Texas Bar No. 204
U. S. Department of Justice
Tax Division
717 N. Harwood Street, Suite 400
Dallas, Texas 75201
Telephone No. (214) 880-9766
Facsimile No. (214) 880-9742

ATTORNEYS FOR UNITED STATES


**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that the foregoing was served by the ECF-system on
June 21, 2019 upon:

Steven Powell, Esq.                         VIA EMAIL steve@powelltaxlaw.com
2170 Buckthorne Place
Suite 300
The Woodlands, TX  77380


/s/ Ramona S. Notinger
RAMONA S. NOTINGER

20