IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-923 |
| | § | |
| L & L INTERNATIONAL, INC. and NA LI, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM AND OPINION GRANTING THE UNITED STATES'S
MOTION FOR SUMMARY JUDGMENT**

The government seeks to collect taxes due for almost 20 years. Why has the case taken so long? In large part because the defendants have had, and taken, many opportunities to submit or identify additional summary judgment evidence to support their claim that they owe no taxes, penalties, or interest. Despite those opportunities, the undisputed competent record evidence establishes that: (1) Na Lin is indebted to the United States Internal Revenue Service for $1,420,041.54 for unpaid income taxes for the year 2000, with penalties and interest; (2) L & L International, Inc. is the alter ego of Na Li, entitling the United States to enforce its tax liens against both Na Li and L & L International, Inc. for payment of Na Li's tax debt, and to liquidate any property owned by or titled to L & L International, Inc. or Na Li to apply toward payment of the income tax Na Li owes; and (3) Na Li and L & L International, Inc. must repatriate any funds that belonged to Na Li or L & L International, Inc. that Na Li or her father, Bin Li, transferred to the Bank of China or another foreign bank account, which are impressed with federal tax liens, and Na Li and L & L International, Inc. must turn over those funds to the United States for payment toward Na Li's $1.4 million federal income tax debt for the tax year 2000.

The reasons for these rulings are set out in detail below.

**I.     Background**

**A. The Summary Judgment Evidence**

The record includes the following exhibits submitted by the United States:

1. Certificate of official record for Na Li's form 1040 for the tax period ending December 31, 2000.
2. A declaration by IRS Revenue Officer Anubhav "Anu" Bagga, with attachments, establishing that Na Li did not file a tax return for tax year 2000, triggering an IRS audit and the filing of a substitute income tax return for that year assessing a tax liability of over $1.4 million.
3. A deposition of Jacob Thomas, prior record owner of Bag Republic, LLC, which employed and paid Na Li in 2009 and 2010.
4. A deposition of Na Li taken on December 3, 2018.
5. Certificate of formation for L & L International, Inc. by its agent, JingMin Lu, filed on January 10, 2011.
6. Chase checking account summary for Na Li for April 2016 to May 2016.
7. The deposition of Bin Li, Na Li's father.
8. A deposition of Na Li taken on January 23, 2018.
9. Assumed name certificate for L & L International, Inc. to conduct business under the name of Bag Republic International, filed on January 13, 2011.

(Docket Entry No. 39).

Na Li and L & L International, Inc. have submitted affidavits from:

1. Julian Chang, a broker associate with a real estate company who, around the year 2000, was a financial consultant for a stock trading company where JingXia Lu, Na Li's mother, traded stocks.
2. Mimi Tan, a neighbor of JingXia Lu, who also traded stocks at the same stock trading company.
3. TieChun Li, the brother-in-law of JingXia Lu, who had an account at the brokering house where JingXia Lu traded stocks.

(Docket Entry No. 43-1).

This summary judgment evidence is considered against the applicable legal standards.

### B. The Legal Standards

#### 1. Summary Judgment

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (quoting *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017)). "A genuine dispute of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014)). "The moving party 'always bears the initial responsibility of informing the district court of the basis for its motion[.]'" *Brandon v. Sage Corp.*, 808 F.3d 266, 269–70 (5th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'" *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995) (per curiam)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to disprove the opposing party's case. *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014). A fact is material if "its resolution could affect the outcome of the action." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "If the moving party fails to meet [its] initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir.

2001)). In deciding a motion for summary judgment, the court resolves all reasonable inferences in favor of the nonmoving party. *City and Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1769 (2015).

### 2. Tax Liability

When, as here, a taxpayer fails to file an individual income tax return, and the IRS receives reports of income paid to the taxpayer for that year, the IRS may calculate her income, and the resulting income tax, based on these reports. (*See* Docket Entry No. 39-2 at 2–3, 125–26). If some of the income is based on stock sales that the taxpayer or an agent conducted, the taxpayer is required to keep records to establish the amount of gross income she earned from those sales. *See* 26 U.S.C. § 6001; 26 C.F.R. 1.6001–1; *Bengtson v. Comm'r*, 101 T.C.M. (CCH) 1235, at *2 (2011). In addition to this general record-keeping requirement, the taxpayer bears the burden to prove a cost basis in stock and other property. *Better Beverages, Inc. v. United States*, 619 F.2d 424, 428, n.4 (5th Cir. 1980). If the taxpayer does not provide this evidence, the IRS may assign the taxpayer a zero basis in the property. *Id.* When the IRS receives evidence of a taxpayer's stock sales from a brokerage firm, the IRS may assign a cost basis of zero, to the extent that the taxpayer does not prove otherwise. *In re Kirk,* 114 B.R. 771, 776–77 (Bankr. M.D. Fla. 1990).

### 3. Alter Ego

The alter-ego doctrine focuses on the relationship between a debtor and an entity. If a debtor uses a corporation as an instrumentality to avoid legal obligations, the corporation's assets may be levied to satisfy the debtor's obligations. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977); *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013) (the IRS may impose tax liens on property held by a third party as the taxpayer's nominee or alter

4

ego). The IRS is among the creditors that may apply the alter-ego doctrine to disregard the corporate form and to collect taxes. *See G.M. Leasing*, 429 U.S. at 351.

Under Texas law, whether there is an alter-ego relationship between a taxpayer and a corporation, trust, or other entity depends on the facts and circumstances. *See Zahra Spiritual Trust v. United States*, 910 F.2d 240, 245 (5th Cir. 1990) (discussing Texas law). Whether Na Li and L & L International, Inc. are in an alter-ego relationship depends on:

1. whether Na Li expended personal funds for L & L;
2. whether Na Li enjoyed the benefits of L & L;
3. whether there was a close family relationship between Na Li and the titleholder of L & L;
4. whether Na Li exercised dominion and control over L & L;
5. whether L & L's titleholder interfered with Na Li's use of L & L;
6. whether Na Li owned L & L;
7. whether L & L observed corporate formalities;
8. whether L & L maintained separate bank accounts, books, and records;
9. whether L & L and Na Li commingled funds;
10. L & L's capitalization;
11. whether Na Li transferred assets, property, or funds to L & L, or vice-versa;
12. whether Na Li organized L & L;
13. whether L & L operated as a distinct business entity;
14. whether L & L transacted Na Li's business; and
15. whether L & L paid Na Li's personal obligations.

*See Century Hotels v. United States*, 952 F.2d 107, 110 (5th Cir. 1992); *id* at 110 n.5.

### 4. Enforcing a Defendant's Tax Liens against an Alter Ego

If a person liable to pay a tax "neglects or refuses to pay the same after demand, the amount (including any interest . . . or assessable penalty . . .) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The IRS has a lien "upon all property and rights to property" belonging to a delinquent taxpayer. *Tex. Commerce Bank-Fort Worth, N.A. v. United States*, 896 F.2d 152, 161 (5th Cir. 1990) (quoting § 6321). "The lien arises on the date that the IRS *assesses* unpaid taxes, applies to currently owned as well as after-acquired property, and continues until the taxpayer

satisfies the debt, or the statute of limitations runs." *Id.* (citing 26 U.S.C. § 6322). The United States may file a public notice of its tax lien to preserve its statutory lien priority against the taxpayer ahead of such third parties as purchasers, security interest holders, and judgment lien creditors. 26 U.S.C. § 6323. A court may enforce a federal tax lien through an order of sale under 26 U.S.C. § 7403. *See United States v. Rodgers*, 461 U.S. 677, 692 (1983).

### 5. Repatriation of Funds Transferred to Foreign Countries

District courts have broad authority to issue orders necessary for the government to collect unpaid federal tax liabilities. 26 U.S.C. § 7402(a). The authority extends to ordering repatriation of funds held in foreign countries and foreign bank accounts to pay taxes owed to the federal government. *United States v. Ross*, 302 F.2d 831, 834 (2d Cir. 1962); *United States v. McNulty*, 446 F. Supp. 90, 92 (N.D. Cal. 1978).

## II. The Timetable Established by the Evidence

Undisputed summary judgment evidence shows the following sequence of events in the years at issue.

- **2000-2007**

Na Li failed to file a federal income tax return for the 2000 income tax year. (Docket Entry No. 39-2 at 74). Third parties reported large amounts of income from stock trades under her social security number. (*Id.* at 72). The IRS conducted an audit examination, and Na Li failed to respond to IRS requests to substantiate the cost basis in these trades. (*Id.* at 6, 74). The IRS made a federal income assessment against Na Li, for unpaid income tax, penalties, and interest, for the 2000 tax year under 26 U.S.C. § 6020(b). (*Id.* at 2–3, 74). Na Li did not pay. (*Id.*). The IRS computed Na Li's tax liability and gave her notice of the deficiency, which she failed to timely challenge. (*Id.*).

In approximately 2006, Na Li became employed by Bag Republic, LLC, a Texas limited liability company owned by Jacob Thomas. (Docket Entry No. 39-3, Thomas Dep. at 26:4–6, 125:9–11, 160:18–21). Na Li's mother, JingXia Lu signed the articles of formation for Bag Republic filed with the Texas Secretary of State. (Docket Entry No. 39-3, Thomas Dep. Exhibit 5 at ECF page 52). JingXia Lu did not run or own Bag Republic. (Docket Entry No. 39-3, Thomas Dep. at 46:10–47:1; Docket Entry No. 39-4, Na Li Dep. vol. 2 at 234:11–13).

In 2007, the IRS made a federal income tax assessment against Na Li for income tax, penalties, and interest due for income on stock trades in 2003. (Docket Entry No. 39-2, Bagga Decl. at 7). Na Li had failed to file a federal income tax return for that year. (*Id.*). As of 2007, Na Li owed the IRS $109,764.40 for her 2003 income taxes. (*Id.*). Despite notice of the tax assessment and demand for payment, Na Li did not pay her 2003 income tax liability. (*Id.*). In February 2017, the IRS wrote off Na Li's 2003 income tax as uncollectable because the ten-year statute of limitations had expired.[1] (*Id.*).

- **2008**

In April 2008, the IRS filed a notice of a federal tax lien against Na Li in Montgomery County, Texas, where she lived at the time, for the 2000 federal tax liability. (*Id.* at 9, 188). Later, in 2017, the IRS filed a notice of federal tax lien against Na Li in Harris County, Texas, where she now lives, for the 2000 federal tax liability. (*Id.* at 9, 189–91). These tax liens encumber Na Li's interest in all real property located in those counties, and in any other personal property. (*Id.* at 9). The IRS also filed notices of federal tax liens in Harris County, Texas, and in the Texas Secretary of State UCC records, against L & L International, Inc. as Na Li's alter ego. (*Id.*). These alter-

---

[1] The ten-year statute of limitations to collect the March 26, 2007, assessment of Na Li's 2000 income tax liability was suspended when the United States filed this suit on March 24, 2017. 26 U.S.C. § 6502.

7

ego liens attached to any property held in L & L International, Inc.'s name, including bank accounts. (*Id.*).

- **2009**

In June and July 2009, Na Li made two wire transfers totaling $100,000 from the Bag Republic account at Chase Bank to an account in her name at the Bank of China in China. (Docket Entry No. 39-3 at 31:3–32:24, 37:13–38:3; *id.* at ECF pages 44, 46). This was income to Na Li and subject to the tax liens against her. Her 2009 federal income tax return reported a total adjusted gross income for 2009 in the amount of $12,000. (Docket Entry No. 39-2 at 3, 113). The return included none of the funds she received from the wire transfers to her Chinese bank account that year. (*Id.* at 3, 113–14).

- **2010**

In December 2010, Na Li wire transferred another $100,000 from the Bag Republic account at Chase Bank to an account in her name at the Bank of China in China. (Docket Entry No. 39-3 at 38:12–40:15; *id.* at ECF page 48). This $100,000 in income is subject to the tax lien for Na Li's 2000 taxes. The 2010 federal income tax return Na Li filed in February 2014, however, reported $0 total adjusted gross income for 2010. (Docket Entry No. 39-2 at 115–16).

- **2011**

On January 10, 2011, Na Li formed L & L International, Inc., a Texas corporation. (Docket Entry No. 39-8). Na Li's aunt, JingMin Lu, who has never resided in the United States, is listed as the registered agent and director of L & L International, Inc. on the certificate of formation filed with the Texas Secretary of State. (Docket Entry No. 39-8 at 1; Docket Entry No. 39-4, Na Li Dep. vol. 2, at 95:22–96:3). Na Li, not JingMin Lu, signed L & L International, Inc.'s corporate records and tax returns. (Docket Entry No. 39-5 at 28; Docket Entry No. 39-6 at 10; Docket Entry

No. 39-8 at 3; Docket Entry No. 39-15 at 2). Na Li had Lee, Huang & Associates prepare L & L International, Inc.'s tax returns, which Na Li or James Lee signed and filed with the IRS. (Docket Entry No 39-5 at 19–28; Docket Entry No. 39-6 at 1–10). Na Li signed as the president of the company. (*See, e.g.*, Docket Entry No. 39-5 at 22, 24).

Na Li paid her personal expenses out of L & L International, Inc.'s bank account at Chase, but she did not declare these payments as income on the tax returns she filed with the IRS. (Docket Entry No. 39-2 at 6, 93–124). Na Li also used L & L International, Inc.'s corporate credit card to pay her personal expenses, without reporting these payments as income on the tax returns she filed with the IRS. (*Id.*). Na Li was the only person who controlled L & L International, Inc.'s business. Her father, Bin Li, received wages out of the L & L International, Inc. bank account during the years when he performed minimal work for the company. (Docket Entry No. 39-10, Bin Li Dep. at 76:2–77:14). Na Li did not provide the testimony of JingMin Lu, by affidavit, declaration, or otherwise.

Before Na Li incorporated L & L International, Inc., she used a personal checking account with JP Morgan Chase Bank in Houston, Texas, to pay her personal expenses. (Docket Entry No. 39-2, Bagga Decl. at 7; Docket Entry No. 39-9). After the IRS began collection proceedings for Na Li's 2000 income tax, she began using the L & L International, Inc. Chase bank account, or a credit card in the name of L & L International, Inc. and Bin Li to pay personal expenses. (Docket Entry No. 39-2, Bagga Decl. at 7). Before he retired, Bin Li was a handyman and construction remodeler. (Docket Entry No. 39-10, Bin Li Dep. at 28:3–25, 56:17–19). He had nothing to do with the management or operation of L & L International, Inc. (*Id.* at 75:8–23). L & L paid Bin Li wages during the years in which he did not remember whether he filed federal income tax returns. (*See id.* at 27:11–30:8, 75:24–78:24).

- **2012**

Although Na Li's 2000 income tax liability was assessed in 2007, she did not challenge it until 2012. (Docket Entry No. 39-2, Bagga Decl. at 6; Docket Entry No. 39-11, Na Li Dep. vol. 1 at 272:22–273:20).

- **2016**

In February 2016, IRS Revenue Officer Anu Bagga interviewed Na Li. Na Li told Officer Bagga that she let her mother use her social security number to trade stocks because her mother did not have her own U.S. social security number. (Docket Entry No. 39-2, Bagga Decl. at 4).

- **2017**

The United States served interrogatories on Na Li, seeking any evidence that she had to substantiate a challenge to the 2000 income tax liability. (Docket Entry No. 14-1). She provided none. She told the IRS that she was talking to her accountants about the 2000 tax year and would try to get the cost basis information for the stock trades under her social security number and file a correct 2000 income tax return. (Docket Entry No. 39-2, Bagga Decl. at 5–6). But she has not provided the information or filed an amended income tax return for 2000. (*Id.*).

- **2018**

In July 2018, the court ordered Na Li, her counsel, and Bin Li to appear for a show-cause hearing in August 2018 to determine whether to hold Na Li and Bin Li in civil contempt for failing to comply with a court order and with subpoenas duces tecum. (Docket Entry No. 25). Na Li and Bin Li appeared at the hearing. The court ordered that:

> [t]he motion for contempt, (Docket Entry No. 23), is denied pursuant to the parties' compliance with the court's rulings stated on the record. By August 20, Na Li must make a formal request for all bank records from the banks in China and the New York branch, showing withdrawals from, deposits into, and the other transactions set out in the government's Exhibit 14. Na Li must report to the government and produce copies of the bank records . . . within 48 hours after receiving them. Bin

Li must produce the requested documents and appear for a deposition in the court's chambers.

(Docket Entry No. 30).

In August 2018, Bin Li was deposed. (Docket Entry No. 39-10). He failed to produce any documents in compliance with the subpoena duces tecum and the court's order, except for his affidavit, which he testified he could not read because it was written in English. (*Id.* at 9:12–18:13). He testified that he was a remodeler but had worked little since 2009 because of poor health. (*Id.* at 55:19–58:5). He testified that in February 2017, he withdrew $235,000 from the L & L International, Inc. bank account, but he deposited only $230,000 into his American First National Bank account. (*Id.* at 59:16–20). The withdrawal occurred on February 27, 2017, one day before Na Li and Bin Li met with Officer Bagga about Na Li's 2000 income tax debt, and shortly before this case was filed. (Docket Entry No. 39-2, Bagga Decl. at 8–9).

In his deposition, Bin Li testified that JingMin Lu, Na Li's aunt, sent someone to his house to pick up $230,000 in cash on August 5, 2018. (Docket Entry No. 39-10, Bin Li Dep. at 44:10–48:15, 58:25–64:20). Bin Li testified that he feared the IRS would take the money. (*Id.* at 61:2–4). While he testified that he has documents showing what happened to the $230,000 he withdrew from the L & L International, Inc. account, he has never provided any documentation since. (*See id.* at 10:6–14, 45:7–17). Bin Li had no corporate records or other documents pertaining to L & L International, Inc. (*Id.* at 88:10–24). He testified that he was never the president of L & L International, Inc. (*Id.* at 88:10–12). He did some work for L & L International, Inc., but he did not remember when or how much he was paid. (*Id.* at p. 76:19–78:16). Before his deposition, he had never seen the IRS W-2 forms showing that L & L International, Inc. paid him wages, and he denied signing a tax return for L & L International, Inc. (*Id.* at 86:6–87:15).

Jacob Thomas also gave a deposition in 2018. (Docket Entry No. 39-3). From approximately 2006 until 2010, Thomas and Na Li worked for Bag Republic, LLC, Thomas's business. (*Id.* at 17:1–11, 26:4–6, 125:9–11). By the time of his deposition, Thomas had not heard from Na Li for five or six years. (*Id.* at 16:14–18). Once Thomas received the deposition subpoena, Na Li called him and indicated that he should testify that the Bag Republic wire transfers went to a business, not to her, and that Bag Republic was a failed business. (*Id.* at 21:20–23:7). Instead, Thomas testified that the main reason Bag Republic closed was that Na Li had taken over the accounting and kept him from knowing what was happening with the finances and tax returns by controlling communications with their accounting firm. (*Id.* at 23:8–25:21).

Thomas testified that in 2009 and 2010, Na Li transferred a total of $200,000 to her Bank of China account from the Bag Republic account, and that this was compensation to Na Li from Bag Republic. (*Id.* at 36:12–40:15). IRS records show that Na Li did not report this compensation on her 2009 or 2010 income tax returns. (Docket Entry No. 39-2 at 3, 113–16).

During his deposition, Thomas reviewed a certificate of formation showing the Bag Republic organizer was JingXia Lu. (Docket Entry No. 39-3, Thomas Dep. at 46:10–24). He did not know JingXia Lu, a person who had nothing to do with the company. (*Id.*). JingXia Lu is Na Li's mother.

Thomas also testified that although Na Li's salary from Bag Republic was $24,000 per year, she wire transferred money to herself out of the corporate bank account for additional amounts. (*Id.* at 56:14–23, 60:17–61:7, 118:18–119:2). The W-2s for Na Li showed annual income of only $24,000. (*Id.* at 60:17–61:7). There were no W-2s or 1099s issued to her for the additional income she received from Bag Republic. (*Id.*; Docket Entry No. 39-2 at 3, 113–16).

## III. Conclusion and Order

The United States is entitled to a judgment against Na Li for her 2000 federal income tax and an order enforcing the federal tax liens and requiring a sale or liquidation of Na Li's assets to satisfy or partially satisfy her federal tax liability. The income tax Na Li owes is $1,420,041.54, plus interest and penalties from April 15, 2019, which remains unpaid. The IRS documents and the declaration of Anu Bagga establish the taxes owed. The documents the IRS provided are presumptive proof of a valid assessment and Na Li produced no evidence to counter the presumption. *Stallard v. United States*, 12 F.3d 489, 493 (5th Cir. 1994). Despite notice and demand for payment of these liabilities, Na Li has not paid.

The United States is also entitled to a judgment that L & L International, Inc. is the alter ego of Na Li and that its assets must be used or sold to pay her taxes. Na Li enjoyed the benefits of L & L International, Inc. when she used its bank account and credit card to pay her personal expenses. She exercised dominion and control over L & L International, Inc., claimed on tax forms to be its president, and is the *de facto* owner of the company, which failed to observe corporate formalities.

The record evidence shows that Na Li was avoiding the payment of her federal tax liability, and that she used L & L International, Inc. to avoid paying her taxes. The alter-ego doctrine exists to prevent this type of creditor avoidance.

Under 26 U.S.C. §§ 6323 (f)(1)(A) and (2), the United States perfected its tax liens against Na Li by filing them in Montgomery and Harris Counties, and it perfected its alter-ego tax liens against L & L International by filing them in Harris County and with the Texas Secretary of State. (Docket Entry No. 39-2, Bagga Decl. at 9).

The court enters judgment for the United States for Na Li's federal income tax liability, in the amount of $1,420,041.54, plus penalties, statutory additions, additional prejudgment interest from April 15, 2019, and postjudgment interest from the date judgment is entered, until paid. 28 U.S.C. § 1961(c)(1); 26 U.S.C. §§ 6601, 6621, 6622. The court orders that the federal tax liens against Na Li and against L & L International, Inc., as the alter ego of Na Li, be enforced; it also orders the sale of Na Li and the company's property, with the proceeds to be applied first to the costs of the sale, and then to the United States for the payment or partial payment of the federal tax debt of Na Li.

Finally, the court orders Na Li and L & L International, Inc. to repatriate and divest their respective funds that were transferred to China or other countries, for payment of Na Li's federal tax debt.

SIGNED on January 13, 2020, at Houston, Texas.

                                                  Lee H. Rosenthal
                                    Chief United States District Judge